**MAYFIELD v. KNOTT et al.　(No. 9083.)**

(Court of Civil Appeals of Texas. Dallas. April 5, 1924.)

Garnishment ⬤⟲56—Check in hands of payee, principal defendant, for payment to other parties under mechanic lien contracts, held not subject to.

Where, at time writ of garnishment was served on bank, money represented by a check to principal defendant and deposited by him with garnishee was not due to him or intended for his personal use, but was to be paid to parties for labor performed and material furnished under two mechanic liens contracts, both of which had been assigned by payee to maker of check, and was never delivered to parties intended, such money remained property of maker of check and was not subject to garnishment for payee's debt.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by M. M. Mayfield against J. H. Knott and others, in which the City National Bank of Dallas was garnisheed. From a judgment for garnishee, plaintiff appeals. Affirmed.

Dabney, Goggans & Ritchie and George T. Lee, all of Dallas, for appellant.

Read, Lowrance & Bates, of Dallas, for appellees.

VAUGHAN, J. This is an appeal from a judgment entered in garnishment proceedings based on a judgment rendered on the 14th day of April, 1922, in cause No. 42115–A, "M. M. Mayfield v. J. H. Knott," in which appellant was plaintiff and J. H. Knott, one of the appellees, was defendant. Thereafter, on the 30th day of September, 1922, appellant caused a writ of garnishment to issue to the City National Bank of Dallas, one of the appellees herein, on the judgment rendered in said original proceedings. The garnishee answered that it was not indebted to appellee Knott, unless certain facts enumerated constituted such indebtedness, to wit, that it held at the time of the service of said writ of garnishment the sum of $1,048.80, deposited with it as a checking account in the name of Mrs. J. H. Knott, but that it did not know whether or not said appellee J. H. Knott had any interest in the funds, or whether or not the funds were the community property of the said J. H. Knott and his wife, Mrs. J. H. Knott.

The garnishee further answered that the Jones Lumber Company, one of the appellees, claimed that the funds belonged to it, or that such funds constituted a trust fund, and, also, that Mrs. J. H. Knott asserted title to some of the funds and tendered the funds into court, and interpleaded J. H. Knott and wife, Mrs. J. H. Knott, and the Jones Lumber Company in order that the court might make proper disposition of the funds and determine the ownership thereof.

The Jones Lumber Company, J. H. Knott, and Mrs. J. H. Knott, by appropriate pleadings, set up their respective interests and equities in the funds. The Knotts claimed that the sum of $48.86 of the amount impounded was the separate fund of Mrs. J. H. Knott, and the Jones Lumber Company and J. H. Knott alleged that the remainder of the deposit, amounting at the time of the service of the writ of garnishment to $1,002, represented the proceeds of a check executed

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and delivered by Jones Lumber Company to J. H. Knott under the following circumstances: That the Jones Lumber Company, prior to and at the date said check was issued, held two certain mechanic's lien contracts executed to J. H. Knott, one by L. L. Montgomery and wife and one by Lee Wells and wife, both of which contracts were assigned and delivered to appellee lumber company, and that the check for $1,185 was to apply on these contracts and was delivered to J. H. Knott to be paid to certain persons enumerated, and to certain classes of laborers mentioned in the pleadings of appellees, for material furnished and work performed in the construction of the improvements embraced in said contracts. That by reason of these facts, the funds representing said check, though deposited in the name of Mrs. J. H. Knott, were, in truth and in fact, trust funds to be used in the payment of such laborers and artisans.

The lumber company further answered that since the proceeds of this check had been impounded by the writ of garnishment, it had been compelled to make checks in lieu thereof direct to the laborers and contractors, whereby it became entitled to the funds held under the writ, and, accordingly, prayed that the amount of the deposit, after deducting the sum of $46.81 claimed by Mrs. J. H. Knott, be adjudged to belong to appellee lumber company.

Appellant, by appropriate pleading, denied that the deposit, or any part thereof, represented a trust fund, and specially alleged that the deposit was actually the property of appellee J. H. Knott and subject to the writ of garnishment, and that Mrs. J. H. Knott had no right to or interest in any portion thereof.

The trial court rendered judgment that none of the funds and effects impounded by the writ of garnishment belonged to the appellee J. H. Knott, but that the sum of $46.81 was the personal and separate property of appellee Mrs. J. H. Knott, and the remainder of the funds shown in such deposit represented funds belonging to the Jones Lumber Company, and, accordingly, decreed that the appellant take nothing by the writ of garnishment and that garnishee be discharged on its answer. From this judgment the case is now before this court on appropriate assignments and propositions not necessary to be here stated, as a general discussion will be sufficient to develop the questions presented.

We find the following facts to have been established:

On the 14th day of April, 1922, appellant, as plaintiff in cause No. 42115-A, recovered judgment against appellee J. H. Knott as defendant therein for the sum of $1,269.68, with interest on $1,034.22 of said sum at the rate of 10 per cent. per annum, and on the balance at the rate of 6 per cent. per annum

from date of judgment, together with all costs.

On the 30th day of September, 1922, appellant caused to be issued in the above cause a writ of garnishment against the appellee City National Bank, as garnishee, which was duly served on the 1st day of October, 1922, at 10:30 a. m. On the 21st day of July, 1922, L. L. Montgomery and wife, Musidore Montgomery, and J. H. Knott, made a contract in writing of that date, by the terms of which said Knott became obligated and bound to furnish all the work, tools, labor, and material of whatever kind and nature to build and complete, in a workmanlike manner, within 90 days from the date of said contract, a 10-room two-story brick veneer residence with garage and walks according to plans and specifications agreed upon by said parties; said improvements to be erected upon a lot 75 by 200 feet out of block 3 of Walker's University Heights addition to the city of Dallas, owned by L. L. Montgomery and wife, in consideration of the sum of $15,000, to be paid by Montgomery and wife as follows: $2,750 cash, and the execution and delivery of three notes of that date by Montgomery and wife, payable to the order of J. H. Knott, numbered 1, 2, and 3, respectively, No. 1 being for $7,500, No. 2 for $2,500, and No. 3 for $2,250, each due and payable 90 days after date, bearing interest at the rate of 8 per cent. per annum from date. That said notes were duly executed and delivered in accordance with said agreement. The payment of said notes was secured by deed of trust as well as by an express mechanic's, contractor's and materialman's lien on the above-described land, and all improvements made thereon under and by virtue of said contract.

The following provisions were contained in said contract:

"* * * Said house and improvements to be delivered to the said parties of the first part within the time hereinabove specified free and clear of all liens, claims and incumbrances whatsoever except as herein provided. * * *

"It is agreed by all the parties hereto that should the contractor abandon for a period of ten days the construction of said improvements, or shall fail for any reason to complete said improvements, then the owner of the aforesaid notes is hereby given the right, either personally or by agent, to take possession of said premises and complete the improvements contemplated by this contract; and in such event the aforesaid liens shall inure to the benefit of the owner of said notes in the same manner and to the same extent as though this contract had been completely performed by the contractor."

On the 21st day of July, 1922, the above notes and mechanic's, contractor's, builder's, and materialman's lien securing the same were for a valuable consideration transferred and assigned by J. H. Knott to appellee lumber company.

As to the making of a contract between J. H. Knott and one Lee Wells for the construction by Knott of improvements on real estate owned by said Wells, and as to the transfer of such contract by Knott to appellee lumber company, the following is all the evidence disclosed by the statement of facts:

J. B. Martin, witness for appellee, testified:

"In the Wells job I think he (referring to Knott) assigned to the Jones Lumber Company the note. When the Jones Lumber Company issued the check for $1,185 to J. H. Knott, $320 of that amount was charged to Knott and Wells. We (referring to said lumber company) designate these jobs usually in the name of the contractor and the owner; that the Jones Lumber Company held mechanic's lien notes on both the Montgomery and Wells jobs, and the check for $1,185 was charged against these notes and funds for these jobs."

Appellee J. H. Knott testified:

"My practice in reference to the Montgomery and Wells jobs with the Jones Lumber Company on the pay rolls was, each week to give them a voucher showing a list of everything I had to pay out, showing every item. The list on the Wells job is as follows: Carpenter work, $220; plumbing, $100."

The witness Martin further testified:

That he was manager of the Jones Lumber Company and was familiar with, the transactions of said company with J. H. Knott; that the method of said company in handling the mechanic's lien accounts, which method was followed in the Montgomery and Wells contracts, was, when the contracts were taken between the owner and the contractor for the construction of certain improvements, to have the contractor bring to the lumber company the contract and note and have them assigned to the company. The company would then advance the contractor the amount called for by the contract to meet his pay roll, pay for brickwork, carpenter, plumbing, plastering, and all other bills. That the company gave J. H. Knott the check for $1,185 involved in this suit for the purpose of paying certain accounts as shown. That before said check was issued J. H. Knott brought a statement showing for what purpose the $1,185 was to be paid out on the Montgomery and Wells jobs. That none of the money represented by said check was for J. H. Knott, personally, and all of it was to be paid to the persons named in the list. Knott was to pay out the funds as the lumber company did not keep cash at the office with which to pay the men. That after the mechanic's lien contracts and notes executed by Montgomery and wife and Wells and wife to Knott had been assigned by him to the Jones Lumber Company, Knott had no further interest in said jobs. That after said contracts and notes were assigned, the lumber company took over and handled and run the jobs. The Jones Lumber Company guaranteed the completion of the job when it took over the mechanic's lien. "We consider that the Jones Lumber Company was under obligation to pay these various persons, and did pay them after the writ of garnishment

had been run against the bank in which said check had been deposited by Knott. We could not claim the money due under the contract until we had carried out the terms of the mechanic's lien contract that was assigned to us, because the mechanic's lien specifically states that the job shall be delivered to the owner free of all liens. I think the Jones Lumber Company was directly obligated to the subcontractors for work done or material furnished on these two jobs, for when the contracts were assigned to the Jones Lumber Company, I would say they were obligated to meet the obligations under them. The subcontractors were employed by Mr. Knott under the original mechanic's lien contract, and we were carrying out the contract under an assignment to us. The subcontractors were employed by Mr. Knott originally; he gave the work to them and then assigned the contract to us and we were carrying it out."

Appellee Knott further testified:

That the list of payments to be made by said lumber company on account of the Montgomery job contained the following: Carpenter, $140; painters, $72; brickmen, $150; plumber, $200; millwork, $150; paint bill, $100; tile floor men, $53; in addition to the items to be paid out on account of the Wells job above mentioned. "When I got this check for $1,185 from the Jones Lumber Company, I deposited it in the City National Bank to my wife's name. It was not so deposited for the purpose of placing the money to her personal credit. I just used her account in order to keep the record of payments made by me so that I could give each subcontractor a check and leave it in the bank until the job was done and then I would have his receipt. I did not have any account at that time in my own name. When I made this deposit, it was my intention to pay out the proceeds of the check to the persons named in the vouchers presented by me to the Jones Lumber Company. The proceeds of this check for $1,185 did not belong to me; it belonged to the Jones Lumber Company. The subcontractors on these jobs did not require the Jones Lumber Company to guarantee the payment of the amount due them for labor and material before they would do the work. I explained to them my arrangement with the Jones Lumber Company, and they knew how payment would be made. I told them that the contract had been assigned to the Jones Lumber Company and they were backing it up and seeing that the subcontractors would get their money. I employed the plumbers, carpenters, painter, and other people to furnish the labor and material on the Montgomery and Wells jobs, and agreed to pay them the contract prices. The Jones Lumber Company did not employ them, and they only issued checks to them after I employed them."

The writ of garnishment was served on the bank immediately after the deposit of the check was made, one check on said fund having been paid prior thereto, in reference to which said Knott testified as follows:

"When I made this deposit, it was my intention to pay out the proceeds of the check to the persons named in the vouchers presented by

me to the Jones Lumber Company, and there were some of the men there with me then. I gave one subcontractor a check just as I went in the bank because he was in a hurry, and, as soon as I deposited my check, he turned around to the teller and he paid him $186. I was then notified by Mr. Nesbitt that I could not draw any more funds."

In order to dispose of this appeal, it is necessary to determine only one question, to wit, in whom did the title to the money represented by the check issued by appellee lumber company and deposited in the name of Mrs. J. H. Knott rest at the time the writ of garnishment was served on the bank? If in J. H. Knott, then the fund so held by the garnishee bank flowing from the check issued by appellee lumber company was subject to the writ of garnishment, notwithstanding the proceeds had been credited to and were standing in the name of Mrs. J. H. Knott.

The notes executed by Montgomery and wife were not for any present consideration passing from Knott to them, but were based upon a consideration to be received by them through the performance of the above contract, and no right to enforce the collection of said notes or liability for the payment of same existed between the original parties thereto at the time appellee lumber company acquired them in due course; and, in acquiring said notes, said company stood in no better relationship in reference to enforcing the payment of same than the original holder, as the liability of the makers on account of the execution and delivery of the notes in the hand of appellee lumber company depended upon the improvements being constructed according to the terms and provisions of the contract executed by the original parties and the delivery of same to Montgomery and wife free and clear of all liens, claims, and incumbrances whatsoever, except as provided for in said contract. Therefore, if appellee lumber company, in obtaining the indorsement and delivery of the notes to it by Knott, had paid him the consideration he was to receive in said transaction, the contract for the construction of the improvements for which said notes were executed not having been performed, the right of said appellee as the holder of said notes to enforce the collection of same would have depended upon the construction of the improvements so provided for in said mechanic's lien contract either by Knott or by appellee lumber company as the holder of said notes; and, as shown by the record, the payment of the money to Knott would have been without any express obligation on his part to said lumber company to thereafter construct said improvements, or that if he had so contracted, he had furnished any security for the protection of said lumber company in the event he should not so comply with same. Certainly we cannot say that the lumber company,

in acquiring the notes, intended thereby to assume all the liabilities under the mechanic's lien contract as the holder of said notes in order to be enabled to collect same, and at the same time parted with the consideration to be received by Knott for the indorsement and delivery of the notes for to do so would place said appellee in the position of having purchased the notes without any present value, with the knowledge on its part that, in order to create a legal liability on the part of Montgomery and wife to pay said notes, it would, in addition to the value paid for same, having to expend a sufficient sum of money to construct said improvements in the event appellee Knott should fail to do so in accordance with the terms and provisions of said contract.

As to the Wells transaction, it is true the record does not contain the mechanic's lien contract executed by and between Wells and wife and J. H. Knott. However, the evidence is sufficient to show that such a contract was executed, together with a note, for the construction of certain improvements on lots owned by Wells and wife; that the note so executed and secured by mechanic's lien was transferred by Knott, the original payee, to appellee lumber company, whereby it became the holder of same in due course; that at the time appellee lumber company acquired the notes no part of the mechanic's lien contract had been performed as to the construction of the improvements provided for therein for which said notes had been executed. Therefore, what we have said in reference to the Montgomery contract and notes applies with equal force to the transaction involving the Wells contract and notes.

It was not necessary for appellee lumber company, as a part of the consideration for the transfer of the notes, to have assumed the performance of the respective contracts to which said notes related in order to become obligated to perform same as the holder of said notes. This burden was thrust upon said appellee company as a condition precedent to the right to assert said notes as a valid liability against the makers. In recognition of this burden, and its right to protect and safeguard its interest in the discharge of same, appellee lumber company assumed the direction and control of the performance of said contracts on the part of said J. H. Knott, especially as to the payment for labor and material; in other words, took over the jobs.

The money represented by the check for $1,185 was not due to Knott or intended for his personal use at the time it was drawn and delivered to him, but was the property of appellee lumber company and was intended for and to be paid to the parties for labor performed and material furnished in the construction of said improvements for Montgomery and Wells, as contained in the pay roll delivered to said appellee by said

Knott and on which said check was issued, and remained the property·of said appellee, never having been delivered to the parties for whom said money was intended. Therefore, it was the property of said appellee at the time said writ of garnishment was served on the garnishee bank and the filing of its answer thereto. The issuance of the check and the handling of it by J. H. Knott, as shown by the evidence, did not have the effect to divest said appellee of its title to the sum of money represented thereby and to vest same in said Knott.

It is our opinion that the judgment of the court below should be affirmed, and it is so ordered.

Affirmed.